UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROBERT W. CABELL,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>ZORRO PRODUCTIONS, INC., JOHN GERTZ, and STAGE ENTERTAINMENT LICENSED PRODUCTIONS,<br><br>　　　　　Defendants. | No.<br><br>COMPLAINT FOR DECLARATORY JUDGMENT, CANCELLATION OF FEDERAL TRADEMARK REGISTRATIONS, INJUNCTIVE RELIEF, AND MONETARY DAMAGES |

Plaintiff Robert W. Cabell submits this Complaint for Declaratory Judgment, Cancellation of Federal Trademark Registrations, Injunctive Relief and Monetary Damages against defendants Zorro Productions, Inc., John Gertz and Stage Entertainment Licensed Productions as follows:

**NATURE OF ACTION**

This is a dispute over intellectual property rights to the well-known fictional character "Zorro." In 1919, New York-base author Johnston McCulley wrote the first Zorro story, which was titled "The Curse of Capistrano." The following year, 1920, McCulley's story was adapted into a silent movie titled "The Mask of Zorro" by Douglas Fairbanks, Sr. Nearly one hundred years later, the character is well-known as the masked outlaw who defends the public against

COMPLAINT -- 1

**ATKINS IP**
93 South Jackson Street #18483
Seattle, WA 98104-2818
(206) 628-0983/Fax: (206) 299-3701

tyrannical officials and other villains. The copyright interests in those works have long ago expired and the works are now part of the public domain. In 1996, plaintiff Robert Cabell authored a musical based on the public domain works. Although Mr. Cabell's rights to use these public domain works is clear, the defendants have engaged in a campaign of intimidation and coercion aimed at preventing Mr. Cabell (and any other third party) from the legitimate use of this public domain material.

Specifically, defendants have fraudulently obtained federal trademark registrations for various "Zorro" marks and falsely assert those registrations to impermissibly extend intellectual property protection over material for which all copyrights have expired. Defendants also fraudulently assert that copyrights for later-published material provide defendants with exclusive rights in the elements of the 1919 story and the 1920 film. By fraudulently asserting rights that do not exist, and by threatening litigation against anyone who purportedly violates these non-existent rights, the defendants have built a licensing empire out of smoke and mirrors. Defendants have recently threatened to sue Mr. Cabell and his licensees for trademark and copyright infringement purportedly relating to Mr. Cabell's musical – a work that is directly based upon the 1919 Zorro book and the 1920 Zorro musical that are in the public domain. Defendants' threats are nothing more than an attempt to bully Mr. Cabell, hoping that he will surrender without challenging defendants' wrongful activities.

Mr. Cabell initiates this litigation to obtain (i) a judgment that his musical does not violate any intellectual property rights held by defendants; (ii) a preliminary and permanent injunction against defendants prohibiting them from making claims that Mr. Cabell's musical infringes upon any of defendants' intellectual property rights; (iii) cancellation of defendants' federal trademark registrations for the mark ZORRO as it relates to literary works, visual arts and performing arts; and, (iv) monetary damages incurred by Mr. Cabell as a result of defendants' fraud, tortious interference and unfair competition.

**PARTIES**

1. Robert W. Cabell is a resident of King County, Washington. Mr. Cabell is the author of the 1996 musical "Z – The Musical of Zorro," based upon the 1919 story authored by Johnston McCulley and the 1920 film produced by Douglas Fairbanks, Sr.

2. Defendant Zorro Productions, Inc. ("ZPI"), based on information and belief, is a California corporation having a place of business Berkeley, California.

3. Defendant John Gertz, based on information and belief, is a resident of Berkeley, California. Upon information and belief, Gertz owns, operates and has control over ZPI.

4. Defendant Stage Entertainment Licensed Productions ("SELP"), based on information and belief, is a foreign entity organized under the laws of the Netherlands with its corporate headquarters in Amsterdam, Netherlands.

**JURISDICTION AND VENUE**

5. This action arises under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, *et seq.*, the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*, and the Copyright Act, 17 U.S.C. §§ 101, *et seq.* The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.

6. Venue in this judicial district is proper under 28 U.S.C. §§1391(b) and (c) in that, on information and belief, defendants have done business in this district or a substantial part of the events giving rise to plaintiff's claims occurred in or were aimed at this judicial district.

7. Defendants are subject to the personal jurisdiction of this Court as they have done business in this district. Defendants have purposefully availed themselves of the benefits of doing business in the State of Washington, by advertising and promoting goods to the residents of Washington and by causing injury to plaintiff within Washington.

## FACTUAL BACKGROUND

A. **The Early Twentieth Century History of ZORRO**


**Zorro's Debut –
McCulley's 1919 story**


**The First Zorro film in 1920**

8. The fictional character Zorro debuted on August 6, 1919, in a publication authored by New York-based Johnston McCulley. McCulley's story, titled "The Curse of Capistrano," was published as a five-part serialization in the magazine, *All-Story Weekly* (as shown above, left).

9. In McCulley's 1919 story, Zorro is the secret identity of Don Diego de la Vega, a nobleman and master living in the Spanish colonial era. Diego becomes Zorro "to avenge the helplessness, to punish cruel politicians," and "to aid the oppressed." The character's motif includes a black costume consisting of a black cape or cloak, a black sombrero, and a black mask that covers the top of his head from eye level upwards. McCulley's Zorro rides a horse and fights with a whip and sword.

10. McCulley's 1919 story was adapted into the 1920 silent movie, "The Mark of Zorro" by Douglas Fairbanks, Sr. (cover art shown above, right). The movie was a commercial success.

11. Under the Copyright Act, any copyright interest in McCulley's story published in 1919 could not have extended past 1975.

12. Under the Copyright Act, any copyright interest in the 1920 film, The Mark of Zorro, could not have extended past 1976.

13. The United States Copyright Office's official publications regarding the duration of copyrights clearly states: "all works published in the United States before January 1, 1923, are in the public domain."

**B.    Mr. Cabell's Musical: Z – The Musical of Zorro**

14. In 1996, plaintiff Robert Cabell published "Z – The Musical of Zorro" a musical authored by Mr. Cabell and expressly based upon the 1919 McCulley story and the 1920 Fairbanks film.

15. Mr. Cabell's production stars Zorro as he is described in the earlier works now in the public domain: a masked avenger leading a double life, donned in black mask, black sombrero, black cape, and with a sword and whip.

16. Cabell's musical was initially released in CD format. The stage production premiered in Eugene, Oregon in 2000.

17. Cabell's musical is scheduled to be performed this summer in Germany as part of the Clingenburg Festspiele (festival). Cabell has licensed rights to the musical to his affiliates in Germany and is entitled to receive royalty payments or licensing fees in connection with the performances.

C. **Defendants' Fraudulent Claims of Trademark and Copyright Ownership**

18. For years, defendants have falsely asserted that ZPI owns the worldwide trademarks and copyrights in the name, visual likeness and character of Zorro.

19. For years, defendants also have falsely asserted that the unauthorized use of the name, character and/or likeness of Zorro is an infringement and a violation of state and federal laws.

20. In fact, defendants know that any and all copyright interest arising out of the 1919 story "The Curse of Capistrano" and the 1920 silent movie "The Mark of Zorro" expired no later than 1975 and 1976, respectively. Defendants know that as a result of the expiration of any copyright interests in those works, those works are in the public domain. Defendants know there can be no valid copyright interest in the name Zorro, the Zorro character and/or the likeness of Zorro as presented in the 1919 story and 1920 movie. Because those works are in the public domain, any person, including plaintiff, is free to use any aspect of those works.

21. Defendants know that their claims of exclusive copyright and trademark ownership are false because defendants have been unsuccessful trying to enforce their claims. In 2001, ZPI filed suit against several defendants asserting their purported exclusive copyrights and trademarks. During that litigation, the U.S. district court for the Central District of California, Honorable Judge Collins, found that:

    a. "It is undisputed, however, that Zorro appears in works whose copyrights have already expired, such as McCulley's story "The Curse of Capistrano" and the Fairbanks' movie, "The Mark of Zorro." *Sony Pictures Entertainment, Inc. et. al. v. Fireworks Entertainment Group, Inc. et al*, 137 F.Supp.2d 1177, 1185 (C.D. Cal. 2001).

    b. "Notably, the initial term of the copyright for the silent picture, 'The Mark of Zorro' expired in 1948. No renewal was filed . . .Therefore, all of the essential character elements of Zorro expressed in 'The Curse of Capistrano' and the silent picture, 'The Mark of Zorro' moved into the public domain when the renewal terms of those copyrights expired." *Id*. at 1198 n. 3.

    c.    "[ZPI] concede . . . they [it owns] no copyright in the character Zorro." *Id*. at 1998 n. 9.

    d.    "The Court notes that since the copyrights in 'The Curse of Capistrano' and 'The Mark of Zorro' lapsed in 1995 or before, the character Zorro has been in the public domain." *Id*. at 1198 n. 31.

    e.    "To claim ownership of a trademark, however, [ZPI] must first identify the mark they seek to protect. [ZPI] concede there is no infringement of an *actual* mark." *Id*. at 1196 (emphasis in original).

22.    In a subsequent ruling, Judge Collins again ruled that ZPI's trademark claims failed as a matter of law because ZPI could not identify the existence of any protectable trademark or trade dress related to Zorro. *See Sony Pictures Entertainment, Inc., et. al. v. Fireworks Entertainment Group, Inc.*, 156 F.Supp.2d 1148, 1162-1163 (C.D. Cal. 2001).

23.    Despite the rulings of a U.S. District Court in 2001, ZPI continued to falsely and fraudulently assert that it owned all copyright and trademark interests relating to Zorro and fraudulently threatened to sue persons using the name, character or likeness of Zorro.

24.    The fraud perpetrated by ZPI and Gertz extends beyond its competitors and into the United States Patent and Trademark Office. On August 17, 1987, defendant ZPI filed an application with the United States Patent and Trademark Office ("USPTO") to register the word mark "ZORRO" as used in connection with story books. When ZPI filed this trademark application, ZPI knew that the term "ZORRO" had fallen into the public domain for use in connection with fictional stories. Nonetheless, when filing the trademark application, ZPI fraudulently declared that it was exclusively entitled to use the "ZORRO" name. The USPTO, unaware of ZPI's fraudulent statements, issued U.S. Trademark Reg. No. 1,524,207 to ZPI.

25.    On September 16, 1991, defendant ZPI filed an application with the United States Patent and Trademark Office ("USPTO") to register the word mark "ZORRO" as used in connection with television shows. When ZPI filed this trademark application, ZPI knew that the term "ZORRO" had fallen into the public domain for use in connection with these types of

COMPLAINT -- 7

services, including movies and film. Nonetheless, when filing the trademark application, ZPI fraudulently declared that it was exclusively entitled to use the "ZORRO" name. The USPTO, unaware of ZPI's fraudulent statements, issued U.S. Trademark Reg. No. 1.731,743 to ZPI.

26. On January 13, 1993, defendant ZPI filed an application with the United States Patent and Trademark Office ("USPTO") to register the word mark "ZORRO" as used in connection with comic books. When ZPI filed this trademark application, ZPI knew that the term "ZORRO" had fallen into the public domain for use in connection with fictional, printed stories. Nonetheless, when filing the trademark application, ZPI fraudulently declared that it was exclusively entitled to use the "ZORRO" name. The USPTO, unaware of ZPI's fraudulent statements, issued U.S. Trademark Reg. No. 1,912,515 to ZPI.

27. On March 11, 1996, defendant ZPI filed an application with the USPTO to register the word mark "ZORRO" as used in connection with books regarding fictional characters. When ZPI filed this trademark application, ZPI knew that the term "ZORRO" had fallen into the public domain for use in connection with stories including fictional characters. Nonetheless, when filing the trademark application, ZPI fraudulently declared that it was exclusively entitled to use the "ZORRO" name. The USPTO, unaware of ZPI's fraudulent statements, issued U.S. Trademark Reg. No. 2,296,302 to ZPI.

28. On June 4, 1996, defendant ZPI filed an application with the USPTO to register the word mark "ZORRO" as used in connection with video discs featuring music and entertainment. When ZPI filed this trademark application, ZPI knew that the term "ZORRO" had fallen into the public domain for use in connection with entertainment, regardless of the format. Nonetheless, when filing the trademark application, ZPI fraudulently declared that it was exclusively entitled to use the "ZORRO" name. The USPTO, unaware of ZPI's fraudulent statements, issued U.S. Trademark Reg. No. 2,239,219 to ZPI.

29.     On September 16, 1997, defendant ZPI filed an application with the USPTO to register the word mark "ZORRO" as used in connection with entertainment, specifically theater productions.  When ZPI filed this trademark application, ZPI knew that the term "ZORRO" had fallen into the public domain for use in connection with entertainment, regardless of format.  Nonetheless, when filing the trademark application, ZPI fraudulently declared that it was exclusively entitled to use the "ZORRO" name.  The USPTO, unaware of ZPI's fraudulent statements, issued U.S. Trademark Reg. No. 2,198,254 to ZPI.

30.     ZPI and Gertz fraudulently obtained these federal trademark registrations as a means to improperly extend the copyright protection that has expired for early Zorro works.  By way of example, ZPI asserts that U.S. Trademark Reg. No. 2,198,254 prevents third parties from promoting Zorro musicals, even if those musicals draw entirely from the 1919 McCulley story and/or the 1920 Fairbanks movie that are in the public domain.

**D.     Defendants' Recent Abuse of Trademark and Copyright Laws**

31.     Mr. Cabell licensed his musical to be produced at the Clingenburg Festspiele (festival) in Germany, during June, 2013.  Mr. Cabell and his licensees have spent, and continue to spend, significant time and money promoting the production in anticipation of the event.



**An online promotion of Mr. Cabell's musical to be produced at the Clingenburg Festspiele**

COMPLAINT -- 9

32. On February 20, 2013, defendant Gertz sent an e-mail to the Director of the Clingenburg Festspiele, Marcel Krohn, falsely claiming that ZPI "owns all right, title and interest in ZORRO. . . ." Gertz's e-mail falsely claims that Mr. Cabell's musical has never been produced professionally and infringes upon ZPI's copyrights and trademarks. Gertz urged the festival to "avoid an inevitable lawsuit" by refusing to produce Mr. Cabell's musical and, instead, to produce a ZPI's musical version of Zorro.

33. On February 21, 2013, ZPI's general counsel sent a letter to Mr. Krohn falsely claiming that "the name, visual likeness, and character of ZORRO is controlled by" ZPI. ZPI's letter falsely characterizes Mr. Cabell's musical as "unauthorized" and formally demands that Mr. Krohn "cease any intention of producing" Mr. Cabell's musical. ZPI's letter threatens that if Mr. Krohn goes forward with the production, the Clingenburg Festival "will be subject to damages pursuant to the trademark and copyright laws, as ZPI will be within its rights to bring legal action. . . ."

34. On February 22, 2013, defendant SELP's General Manager, Willem Metz, sent an e-mail to Bettina Migge, legal counsel for the festival, threatening to "undertake all necessary legal actions to stop the Clingenburg production. . . ." SELP's communications repeat the fraudulent allegations that ZPI owns any and all trademark and copyright interests in anything "Zorro." SELP knows that the statements in its February 22, 2013 communication are false.

35. The real purpose of the defendants' communications to Mr. Cabell's licensees was to convince the Clingenburg Festival – through bullying and scare tactics – to cancel production of Mr. Cabell's musical and, instead, produce an event based on a musical purportedly owned by ZPI.

36. The defendants' threats of legal action are fraudulent. ZPI and SELP know the threats are fraudulent and make the threats as an inappropriate and illegal attempt to divert business from Mr. Cabell to ZPI.

COMPLAINT -- 10

**ATKINS IP**
93 South Jackson Street #18483
Seattle, WA 98104-2818
(206) 628-0983/Fax: (206) 299-3701

# CAUSES OF ACTION

## Claim 1
### Declaration Judgment of Non-infringement

37. Mr. Cabell repeats and re-alleges each of the allegations contained in paragraph 1 through 36 of this Complaint, as if fully set forth herein.

38. A dispute has arisen between the parties, and an actual and justiciable controversy exists, in that defendants assert, and Mr. Cabell denies, that Mr. Cabell's musical infringes ZPI's copyright and trademark interests.

39. Mr. Cabell requests a judicial determination and declaration by this Court that his musical does not infringe upon any copyright or trademark interest of ZPI.

40. Mr. Cabell has no other existing, speedy, adequate or proper remedy other than a declaration of the parties' rights as prayed for herein.

## Claim 2
### Preliminary and Permanent Injunctive Relief

41. Mr. Cabell repeats and re-alleges each of the allegations contained in paragraph 1 through 40 of this Complaint, as if fully set forth herein.

42. Mr. Cabell requests a preliminary and permanent injunction issue enjoining defendants from making asserting that Mr. Cabell's musical infringes upon any copyright, trademark, or other intellectual property right owned by ZPI or any ZPI affiliate.

## Claim 3
### Cancellation of Federal Trademark Registration

43. Mr. Cabell repeats and re-alleges each of the allegations contained in paragraph 1 through 42 of this Complaint, as if fully set forth herein.

44. The following federal trademark registrations were falsely and fraudulently obtained by ZPI and/or Gertz: US. Reg. Nos. 1,524,207; 1,912,515; 1,731,743; 2,296,302; 2,239,219; and, 2.198,254.

ATKINS IP
93 South Jackson Street #18483
Seattle, WA 98104-2818
(206) 628-0983/Fax: (206) 299-3701

45. ZPI's federal trademark registrations are used by ZPI as fraudulent and inappropriate attempts to lengthen protection of works for which copyrights have already expired.

46. If ZPI is permitted to retain the registrations sought to be cancelled, and thereby, the prima facie exclusive right to use in commerce the Zorro's marks on items such as books, films, plays and musicals, the purpose and policy of the Copyright Act will be thwarted and frustrated.

47. Mr. Cabell is, and will continue to be, damaged by ZPI's trademark registrations.

48. Mr. Cabell requests an Order from this Court cancelling U.S. Reg. Nos. 1,524,207; 1,912,515; 1,731,743; 2,296,302; 2,239,219; and, 2.198,254.

### Claim 4
**Tortious Interference with Contract and Business Expectancy**

49. Mr. Cabell repeats and re-alleges each of the allegations contained in paragraph 1 through 48 of this Complaint, as if fully set forth herein.

50. Prior to February 20, 2013, Mr. Cabell had entered into an agreement with the Clingenburg Festspiele for the licensing of Mr. Cabell's musical.

51. Defendants were aware of Mr. Cabell's contractual license to produce "Z – The Musical of Zorro" at the Clingenburg Festspiele as is evidence by the communications from Gertz, ZPI and SELP urging Mr. Cabell's licensees to breach the agreement.

52. The communications sent to by ZPI, Gertz and SELP were neither accurate nor justified in their factual statements. The communications were sent to Mr. Cabell's customer to intimidate and to coerce the customers to license ZPI's musical instead of Mr. Cabell's.

53. Upon information and belief, ZPI, Gertz and SELP have contacted other customers, clients, licensees and prospective business affiliates of Mr. Cabell's with similar

fraudulent and false statements meant to intimidate and coerce the recipients not to utilize Mr. Cabell's musical works.

54. The communications of ZPI, Gertz and SELP constitute tortious interference with a contractual relationship or business expectancy under Washington state law.

55. As the direct and proximate result of defendants' tortious interference, Mr. Cabell has suffered substantial financial damage.

### Claim V
### Common Law Fraud

56. Mr. Cabell repeats and re-alleges each of the allegations contained in paragraph 1 through 55 of this Complaint, as if fully set forth herein.

57. The communications by ZPI, Gertz and SELP to Mr. Cabell's customers, clients, licensees and prospective business affiliates contained material, false statements of fact.

58. At the time of the communications, ZPI, Gertz and SELP knew of the falsity of their statements.

59. ZPI, Gertz and SELP made the false, material statements with the intention that Mr. Cabell's customers, clients, licensees and prospective business affiliates would act on those statements; namely, that they would cease doing business with Mr. Cabell and instead utilize works owned by ZPI. In fact, upon information and belief, Mr. Cabell's customers, clients, licensees and prospective business affiliates have relied on the communications from ZPI, Gertz and/or SELP, resulting in a diversion of business from Mr. Cabell to ZPI.

60. As a direct and proximate result of the fraud committed ZPI, Gertz and SELP, Mr. Cabell has suffered substantial financial damage.

### Claim 6
### Violation of Consumer Protection Act

61. Mr. Cabell repeats and re-alleges each of the allegations contained in paragraph 1 through 60 of this Complaint, as if fully set forth herein.

62. The communications by ZPI, Gertz and SELP to Mr. Cabell's customers, clients, licensees and prospective business affiliates are false, unfair and deceptive.

63. The communications by ZPI, Gertz and SELP did (and do) occur in trade and commerce; namely, defendants' false statements are made with the intent to divert trade and commerce from Mr. Cabell to defendants.

64. The defendants' false claims to ownership of intellectual property related to works that are clearly in the public domain negatively affect the public interest. Defendants' false claims serve to chill creativity among those, including Mr. Cabell, desiring to build upon the early Zorro works. As a result, the public is precluded from new works of art.

65. As a direct and proximate result of defendants' actions, Mr. Cabell has suffered significant injury to his business.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff Robert W. Cabell prays that this Court grant him the following relief:

A. A Declaratory Judgment that the musical, "Z – The Musical of Zorro," does not infringe any copyright, trademark, or other intellectual property right owned by Zorro Productions, Inc. or John Gertz.

B. Preliminary and permanent injunctions enjoining defendants Zorro Productions, Inc., John Gertz, Stage Entertainment Licensed Productions and all those acting in concert with defendants from making claims that Robert W. Cabell's musical, "Z – The Musical of Zorro," infringes any copyright or trademark interests of Zorro Productions, Inc. or John Gertz.

C. Judgment directing the United States Patent and Trademark Office to cancel U.S. Trademark Registration Nos. 1,524,207; 1,912,515; 1,731,743; 2,296,302; 2,239,219; and, 2.198,254.

D. Judgment in favor of Robert W. Cabell finding that defendants have tortiously interfered with plaintiff's business relationships and expectancies.

E. Judgment in favor of Robert W. Cabell finding that defendants have committed fraud in their communications to plaintiff and plaintiff's licensees.

F. Judgment in favor of Robert W. Cabell finding that defendants have violated the Washington Consumer Protection Act.

G. Any and all ascertainable damages caused by the unlawful acts of defendants, as to be determined at trial.

H. Reasonable attorney's fees and costs of this action.

I. Any such other relief as the Court may deem proper.

DATED this 13th day of March, 2013.

By /s/ Greg Latham
Greg Latham
*Pro Hac Vice Application Forthcoming*
Intellectual Property Consulting
201 St. Charles Avenue
New Orleans, LA 70170
T:(504) 322-7166/F:(504) 322-7184
E-mail: glatham@iplawconsulting.com
Attorneys for Plaintiff

By /s/ Michael G. Atkins
Michael G. Atkins
WSBA# 26026
Atkins Intellectual Property, PLLC
93 South Jackson Street #18483
Seattle, WA 98104-2818
T (206) 628-0983/F (206) 299-3701
E-mail:  mike@atkinsip.com
Attorneys for Plaintiff