UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROBERT W. CABELL, <br><br>              Plaintiff, <br><br>        v. <br><br> ZORRO PRODUCTIONS, INC. and JOHN GERTZ, <br><br>            Defendants. | Case No. C13-449 RSM <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT ZORRO PRODUCTIONS, INC.'S MOTION FOR A PROTECTIVE ORDER** |

## I.  Introduction

THIS MATTER comes before the Court on defendant Zorro Productions Inc.'s Motion for a Protective Order limiting the scope of Plaintiff's jurisdictional discovery. Dkt. #32. Zorro Productions Inc. ("ZPI") seeks an order forbidding inquiry into matters sought by Plaintiff Robert W. Cabell in his July 17, 2013 subpoena to five non-parties. In the alternative, Defendant ZPI asks for a two-tiered protective order allowing parties and third parties to designate highly confidential material "Attorney's Eyes Only." For the reasons set forth below, the Court GRANTS Defendant's protective order in part.

## II.  Background

Plaintiff Robert W. Cabell ("Cabell") brought this suit against Defendants Zorro Productions, Inc. and its president John Gertz as well as former defendant Stage Entertainment Licensed Productions ("SELP") in this dispute over intellectual property rights to the well-known fictional character "Zorro."

---

LATHROP & GAGE LLP
1888 Century Park East, Suite 1000
Los Angeles, CA  90067

1  Defendant ZPI claims to be the worldwide proprietor of the trademark "Zorro" and to own numerous

2  copyrights pertaining to "Zorro." ZPI characterizes itself as "in the business of… securing and owning

3  various copyrights and trademarks pertaining to Zorro and licensing these rights for use in various

4  works…". Dkt. # 32, p. 2. In 1996, plaintiff authored the musical "Z – the Musical of Zorro" based on

5  what he asserts had become public domain works. Dkt. # 1, p. 2. Plaintiff initiated this litigation on

6  March 13, 2013, after ZPI allegedly threatened licensees of Mr. Cabell's musical with legal action for

7  trademark and copyright infringement. Dkt. # 1, p. 2. Specifically, Mr. Cabell alleges that in February

8  2013, Defendants sent a letter and email to the Director of the Clingenburg Festspiele in Germany,

9  which had agreed to produce Mr. Cabell's musical, threatening the Festival with legal action if it went

10  forward with the production. Dkt. # 1, p. 10. In his First Amended Complaint, Mr. Cabell further

11  alleges that ZPI sent a similar letter to another German production company after initiation of this suit.

12  Dkt. # 8, p. 12. Mr. Cabell also claims that Defendants' musical "Zorro," as well as the book by author

13  Isabel Allende upon which it was based, violate Plaintiff's copyrights in the original material in his

14  musical. Dkt. # 8, p. 13. Plaintiff has moved for declaratory judgment of non-infringement, injunctive

   relief, cancellation of ZPI's federal trademark registrations, and monetary damages. Dkt. # 8.

15        On May 16, 2013, Defendants ZPI and John Gertz (collectively "ZPI defendants") filed a

16  motion to dismiss Mr. Cabell's amended complaint on various grounds, including under Fed. R. Civ. P.

17  12(b)(2) for lack of personal jurisdiction. Upon Plaintiff's Motion for Leave to Engage in Jurisdictional

18  Discovery (Dkt. # 23), ZPI defendants agreed that Cabell could propound limited discovery regarding

19  their contacts with Washington, though they did not reach agreement as to the scope of discovery and

20  appropriate protective orders. On June 21, 2013, the Court entered an order on the stipulation of the

21  parties entitling Cabell to conduct personal jurisdictional discovery "in order to respond to the Motion

22  to Dismiss filed by the ZPI defendants" for 90 days from entry of the order.  Dkt. # 28. On July 17,

23  2013, Plaintiff issued subpoenas to five non-parties: Isabel Allende ("Allende"), Warner Bros.

24  Entertainment, Inc. ("Warner Bros."), 21st Century Fox ("Fox"), Sony Pictures Entertainment ("Sony"),

25  and Allied Artists International ("Allied"). Those subpoenas, which are the subject of the instant

26  motion, demand broad production of agreements and sales by the subpoenaed parties relating to the

ORDER ON ZORRO PRODUCTIONS, INC.'S MOTION FOR A PROTECTIVE ORDER - 2

character Zorro, including: all contracts and agreements between ZPI and the defendants, all contracts

relating to use of or distribution of goods or services incorporating intellectual property relating to

Zorro, and total annual sales both overall and in Washington since January 1, 2000 from any product or

service incorporating Zorro.  The non-parties separately responded to the subpoenas with similar

objections, including that "the requests are harassing, overly burdensome, and seek to impose

unnecessary and undue expenses" on the subpoenaed parties, and that the requests "seek documents and

information that are irrelevant and not reasonably calculated to lead to the discovery of admissible

evidence." Dkt. # 35-6, pp. 22, 41. On July 31, 2013, Defendant ZPI filed the instant motion for a

protective order. Dkt. # 32. On Sept. 18, 2013, the Court entered an order on stipulation of the parties

allowing Plaintiff an additional 29 days, until October 18, 2013, to conduct jurisdictional discovery.

Dkt. # 50.

### III. Analysis

#### A.  Legal Standard

While the Federal Rules of Civil Procedure allow for broad discovery, the scope of discovery is not

unlimited. Fed. R. Civ. P. 26(b)(1) constrains parties to obtain "discovery regarding any nonprivileged

matter that is relevant to any party's claims or defense." *See Shoen v. Schoen*, 5 F.3d 1289, 1292 (9th

Cir. 1993). In assessing the relevancy of information for the purposes of discovery, the presiding court

examines whether the information sought is "reasonably calculated to lead to the discovery of

admissible evidence." *Bite Tech, Inc. v. X2 Impact, Inc.*, 2013 WL 195598 (W.D. Wash. 2013)(quoting

*Survivor Media Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005)). General limitations on

discovery "apply with equal force" to subpoenas to non-parties as they do to parties. *Simplex Mfg.Co. v.*

*Chien*, 2012 WL 3779629, at *1 (W.D. Wash. 2012).

Districts courts have broad discretion to determine the scope of discovery. *Id.*; *Hallet v. Morgan*,

296 F.3d 732, 750; *Seiter v. Yokohama Tire Corp.*, 2009 WL 2461000, *1 (W.D. Wash. 2009)("The

decision to issue a protective order rests within the sound discretion of the trial court."). The Court in

which the action is pending has the authority to "issue an order to protect a party or person from

annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The

1   presiding court is in this best position to determine the underlying discovery dispute. *Pure Fishing, Inc.*

2   *v. Redwing Tackle, Ltd.*, 2012 WL 1133384, at *2 (W.D.Wash. 2012). While information sought during

3   pre-trial discovery is presumptively open to the public, a party seeking a protective order may override

4   this presumption by demonstrating "good cause." *Phillips ex. Rel. Estates of Byrd v. General Motors*

5   *Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002). To do so, the moving party bears the burden of showing

6   that "specific prejudice or harm will result if no protective order is granted." *Id.* at 1210. *See also*,

7   *Seiter*, 2009 WL 2461000, at * 1 (explaining that "the moving party must make a clear showing of a

8   particular and specific need for the order."). Where protective order disputes involve conflicting

9   interests, the Court balances the needs of the party seeking disclosures against the risk of injury that

10  may result if the requested discovery is permitted. *See Brown Bag Software v. Symantec Corp*, 960 F.2d

11  1465, 1469-70 (9th Cir. 2002); *Bite Tech, Inc. v. X2 Impact, Inc.*, 2013 WL 195598, at *2.

    Although typically only the recipient of a subpoena has standing to assert objections, "[a] party has

12  standing to challenge a subpoena issued to third parties where its own interests may be implicated."

13  *Johnson v. Bancorp*, 2012 WL 6726523, at *2 (W.D. Wash. 2012). Fed. R. Civ. P. 26(c)(1) permits a

14  party to seek a protective order from the presiding court in order to restrict the party seeking discovery

15  from pursuing certain requests on third parties. *Bite Tech, Inc. v. X2 Impact, Inc.*, 2013 WL 195598, at

16  *4. *See also*, *Beckor v. Precor, Inc.*, 2009 WL 3013656, at *4 (W. D. Wash. 2009) (interpreting

17  Fed.R.Civ.P. 26(c)(1) to permit "'any party' to seek a protective order from the presiding court."). Such

18  restrictions may include "forbidding inquiry into certain matters," "designating the persons who may be

19  present when discovery is conducted," and "requiring that a trade secret or other confidential research,

20  development, or commercial information not be revealed." Fed. R. Civ. P. 26(c)(1)(A)-(H).  The Court

21  finds that because the subpoenas seek confidential information implicating ZPI's privacy interests and

    bear on ZPI's business relationships with its licensees, ZPI has standing to bring this motion.

22  **B.  Permissible Scope of Inquiries**

23  Defendant ZPI first argues that the subpoenas to non-parties at issue in this motion are overly broad

24  and "seek information that is far beyond the scope of discovery contemplated by the Court's June 21,

25  2013 Order." Dkt. # 32, p. 9. ZPI asserts that much of the information sought is unrelated to ZPI's

ORDER ON ZORRO PRODUCTIONS, INC.'S MOTION FOR A PROTECTIVE ORDER - 4

26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

contacts with Washington, to which Plaintiff's jurisdictional discovery is necessarily limited. In particular, ZPI questions the relevance of inquires into nationwide sales data, ZPI's licensing agreements with third-parties governing nationwide sales, and Zorro-related distribution agreements between the third-parties and other non-parties. ZPI further asserts that plaintiff's requests for information on sales in Washington are unrelated to personal jurisdiction over ZPI, which allegedly does not itself distribute or sell in Washington. In response, Plaintiff contends that licensing agreements are relevant to the extent that they establish ZPI's control over the activities of licensees that take place in Washington. Plaintiff also contends that nationwide sales data is relevant as ZPI's licensees may not have sales data specific to Washington. Dkt. # 35, p. 7.

Plaintiff at this stage of the proceedings is entitled to conduct jurisdictional discovery to the extent that it is "precisely focused discovery aimed at addressing matters relating to personal jurisdiction." *U.S. ex rel Barko v. Haliburton Co.*, 270 F.R.D. 26, 28 (D.D.C. 2010)(quoting *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1352 (D.C.Cir. 2000)). Personal jurisdiction in a forum state is proper where a defendant has "minimum contacts" with the State of Washington and the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 315 (1945).  In order to defeat Defendant's Motion for Summary Judgment, plaintiff must make a prima facie showing that it has either "general jurisdiction" by virtue of its "continuous and systematic" contacts with the forum state or "specific jurisdiction." Courts in this circuit evaluate the latter using a three-prong test, according to which: 1) the non-resident defendant must purposefully direct activities to the forum state; 2) the claim must arise out of or relate to the defendant's forum-related activities; and 3) the exercise of jurisdiction must comport with fair play and substantial justice. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004). The Court finds that Plaintiff must, at this stage of the proceedings, constrain his inquiries to facts that are relevant to establishing either general or specific jurisdiction according to these standards.

The Court is not persuaded that broad inquiries into nationwide sales data and licensing and distribution agreements unrelated to sales of products and services in Washington are relevant to a showing of personal jurisdiction. Plaintiff mistakenly relies on *Breckenridge Pharmaceuticals Inc. v.*

ORDER ON ZORRO PRODUCTIONS, INC.'S MOTION FOR A PROTECTIVE ORDER - 5

1  *Metabolite Laboratories, Inc.*, 444 F.3d 1356 (Fed. Cir. 2006) for the proposition that ZPI may be

2  subject to personal jurisdiction in Washington where its licensing agreements with non-parties provide

3  that ZPI exercises control over licensee's sales agreement, require ZPI to litigate infringement claims,

4  or require ZPI to indemnify its licensee for third-party infringement claims. Dkt. # 35, p. 7. Unlike

5  *Breckenridge*, the present case does not concern patent claims and thus Federal Circuit precedent does

6  not control. *See, e.g.*, *KGM Industries Co., Inc. v. Harel*, 2012 WL 5363328 (C.D. Cal.

7  2012)(explaining that Federal Circuit law determines the exercise of personal jurisdiction for patent

8  cases). Moreover, the *Breckenridge* court found examination of license agreements appropriate to

9  establishing specific jurisdiction where the licensee was the defendant's exclusive licensee in the forum

10  state and where the defendant's infringing activity had been directed to the forum state. *Breckendrige*,

11  444 F.3d 1356, at 1366. With regard to establishing specific jurisdiction, the Ninth Circuit's three-

12  prong test similarly limits plaintiff to discovery directed at the relationship between the forum state and

13  plaintiff's claims. *Holland Ameica Line Inc. v. Warsila North America, Inc.*, 485 F.3d 450, 460 (9th cir.

14  2007) ("Unlike general jurisdiction, specific jurisdiction is tethered to a relationship between the forum

15  and the claim."). Plaintiff's inquiry into the placement by non-parties of Zorro-related products and

16  services into the general stream of commerce is of marginal relevance to the establishment of personal

17  jurisdiction. *Holland American Line*, 485 F.2d at 459 (2007)(finding evidence of sales of product's by

18  defendant that "ended up in Washington" insufficient to establish personal jurisdiction as "[t]he

19  placement of a product into the stream of commerce, without more, is not an act purposefully directed

20  toward a forum state.").

    The Court finds that balance of benefits and burdens favors granting ZPI's motion for protective

21  order with respect to those parts of the non-party subpoenas that do not pertain to the relationship

22  between ZPI and the subpoenaed party or to contact between ZPI or the subpoenaed party and the State

23  of Washington. Requiring subpoenaed parties to produce all contracts, agreements and sales data

24  related in any way to "Zorro" would be extremely costly and burdensome. Such "unfocused fishing

25  expeditions" are discouraged by Federal Rule of Civil Procedure 26(b) and by Local Rule 26(f), which

26  requires that "discovery requests…should be reasonably targeted, clear, and as specific as possible."

ORDER ON ZORRO PRODUCTIONS, INC.'S MOTION FOR A PROTECTIVE ORDER - 6

1   Local Rules W.D. Wash. CR 26(f). *See Defreitas v. Tillinghast*, 2013 WL 209277, at *3 (W.D. Wash.

2   2013). Where the relevance of the requested information is low, avoiding the harm that comes with the

3   burden of overbroad discovery "constitutes 'good cause' for a protective order." *Id.* The Court

4   accordingly GRANTS the motion for protective order for non-parties Warner Bros., Fox, Sony, and

5   Allied with respect to document request No.'s 2, 3, 4, and 5(a) to the extent that the requests are not

6   targeted toward the non-parties' relationships with ZPI or contacts with the State of Washington. The

7   Court DENIES the motion for protective order with respect to request No. 1 and No. 5(b). Plaintiff may

8   proceed with requests for contracts and agreements between non-parties and ZPI, for contracts and

9   agreements concerning sales and distribution of Zorro-related products and services in or specifically

10  directed toward Washington, and for total annual sales of Zorro-related products or services specifically

11  within Washington. With respect to Plaintiff's subpoena served on non-party Allende, the Court

12  DENIES the motion for protective order with respect to document request No. 1 and request No.'s 2(c)

13  and 2(d), as these requests relate to Allende's relationship to ZPI and sales specifically in Washington.

14  The Court GRANTS the motion for protective order with respect to request No.'s 2(a) and 2(b), as well

15  as request No. 3 regarding movies based on Allende's book to the extent that Plaintiff requests

16  contracts of agreements that do not involve ZPI or Washington-based production, licensing, or

17  distribution.

### C. Attorneys' Eyes Only (AEO) Designation

18      In the event that the Court denies the non-parties full relief from subpoena requests, ZPI requests a

19  two-tiered protective order that allows Defendants to designate highly confidential documents

20  "Attorneys Eyes' Only." Pursuant to Local Rule 26(c)(2), ZPI has submitted a redlined version of its

21  proposed protective order. Dkt. # 33, Ex. G. The proposed order seeks a designation of AEO for all

22  documents that contain commercially sensitive information, including "any trade secret or other

23  confidential research, design, development, or commercial information," and specifically for

24  "information regarding ZPI's licenses," including their terms and associated revenues. Dkt. # 33-1, p.

25  32. Because the Court grants in part and denies in part ZPI's motion to relieve non-parties from

26  document requests, a two-tiered protective order is appropriate. *See DeFreitas*, 2013 WL 209277, at *4.

ORDER ON ZORRO PRODUCTIONS, INC.'S MOTION FOR A PROTECTIVE ORDER - 7

1    A Court may enter a protective order providing "that a trade secret or other confidential research,

2    development, or commercial information not be revealed or be revealed only in a designated way." Fed.

3    R. Civ. P. 26(c)(1)(G). The Ninth Circuit recognizes that district courts have great flexibility to protect

4    documents that contain confidential or commercially sensitive information. *Id. See also, Phillips ex rel.*

5    *Estate of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002)("The law…gives district

6    courts broad latitude to grant protective orders to prevent disclosure of materials for many types of

7    information, including, but not limited to, trade secrets or other confidential research, development or

8    commercial information."). The district court has broad discretion to determine the appropriate degree

9    of protection. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).  The moving party bears the

10   burden of demonstrating that "good cause" exists for a protective order to shield the subpoenaed party

11   from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

12   The Court finds that ZPI has carried its burden of demonstrating good cause for the Court to enter

13   ZPI's proposed two-tiered protective order for the limited purpose of jurisdictional discovery

14   designating the specified highly confidential materials to be viewed only by attorneys working in this

15   action and their designated employees and by persons connected with the Court. As Plaintiff seeks to

16   compete with ZPI in licensing Zorro-related intellectual property, an AEO designation for confidential

17   license agreements and other sensitive business documents is warranted to shield Defendants from the

18   specific harm of providing proprietary information to a competitor. *See UCC Ueshima Coffee Co., Ltd.*

19   *v. Tully's Coffee Corp.*, 2007 WL 710092, at *2 (W.D. Wash. 2007). Plaintiff alleges that he will suffer

20   "extreme prejudice" if he is unable to personally view the designated materials. The Court finds that

21   Mr. Cabell has not established that restricting disclosure of the designated confidential and

22   commercially sensitive information to his attorneys will prejudice his ability to demonstrate personal

23   jurisdiction over Defendant. *See Id.* (explaining that non-moving party's failure to demonstrate that

24   AEO designations would prejudice its case weighed in favor of granting protective order). The Court

25   accordingly finds that the potential harms to ZPI associated with unprotected disclosure of the

26   designation information outweigh the unlikely benefits to Mr. Cabell of personally viewing sensitive

business information in order to establish personal jurisdiction. The Court expects the parties to both

ORDER ON ZORRO PRODUCTIONS, INC.'S MOTION FOR A PROTECTIVE ORDER - 8

1   use and challenge AEO designations sparingly and only where necessary in order to minimize onerous

2   litigation.

3   ## IV. Conclusion

4   As set forth above, it is hereby ORDERED that defendant ZPI's motion for protective order to

5   shield the five subpoenaed non-parties from disclosure is GRANTED in part as to documentary

6   requests that do not pertain to the subpoenaed non-parties' relationships with ZPI or to contacts with

    the State of Washington, including through licensing and distribution agreements and sales. It is

7   FURTHER ORDERED that ZPI's proposed two-tiered protective order set forth at Dkt. # 33, Ex. G

8   and allowing for the designation of specified highly confidential and commercially sensitive materials

9   as Attorneys' Eyes Only is ENTERED as to jurisdictional discovery and incorporated by reference. The

10  remaining portions of ZPI's motion for protective order are DENIED.

11

12  Dated this 2nd day of October 2013.

13

14

15  RICARDO S. MARTINEZ
    UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

ORDER ON ZORRO PRODUCTIONS, INC.'S MOTION FOR A PROTECTIVE ORDER - 9

26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26