UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROBERT W. CABELL,

Plaintiff,

v.

ZORRO PRODUCTIONS., INC. and JOHN GERTZ,

Defendants.

CASE NO. 13-cv-00449RSM

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

THIS MATTER comes before the Court on Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, Forum Non Conveniens, and Failure to State a Claim. Dkt. # 20. Plaintiff has propounded limited jurisdictional discovery pursuant to agreement of the parties and by Order of this Court (*see* Dkt. # 28), after which Plaintiff filed his response brief and Defendants their reply (Dkt. ## 60, 65). Having considered the moving papers, applicable case law, and the remainder of the record, and having heard oral argument by the parties, the Court grants Defendants' motion to dismiss for lack of personal jurisdiction.

**BACKGROUND**

Plaintiff Robert W. Cabell brought this suit against Defendants Zorro Productions, Inc. ("ZPI") and its president John Gertz, as well as former defendant Stage Entertainment Licensed Productions ("SELP")[1], in this dispute over intellectual property rights to the well-known fictional character "Zorro." Defendant ZPI claims to be the worldwide proprietor of the trademark "Zorro" and to own numerous copyrights pertaining to "Zorro." ZPI characterizes itself as "in the business of… securing and owning various copyrights and trademarks pertaining to Zorro and licensing these rights for use in various works… ." Dkt. # 32, p. 2. In 1996, Plaintiff authored the musical "Z – the Musical of Zorro" based on what he asserts had become public domain works. Dkt. # 1, p. 2.

Plaintiff initiated this litigation on March 13, 2013, after ZPI allegedly threatened licensees of Mr. Cabell's musical with legal action for trademark and copyright infringement. Dkt. # 1, p. 2. Specifically, Mr. Cabell alleges that in February 2013, Defendants sent a letter and email to the Director of the Clingenburg Festspiele in Germany, which had agreed to produce Mr. Cabell's musical, threatening the Festival with legal action if it went forward with the production. Dkt. # 1, p. 10. In his Amended Complaint, Mr. Cabell further alleges that ZPI sent a similar letter to a German production company after initiation of this suit. Dkt. # 8 ("FAC"), p. 12. Mr. Cabell also claims that Defendants' musical "Zorro," as well as the book by author Isabel Allende upon which it was based, violate Plaintiff's copyrights in the original material in his musical. *Id.* at p. 13. Mr. Cabell has moved for declaratory judgment of non-infringement, injunctive relief, cancellation of ZPI's federal trademark registrations, and monetary damages. Dkt. # 8.

---

[1] Plaintiff voluntarily dismissed this action with prejudice as to all claim asserted against SELP on September 23, 2013. *See* Dkt. # 51.

On May 16, 2013, Defendants ZPI and John Gertz filed the instant Motion to Dismiss Mr. Cabell's amended Complaint on various grounds, including under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. Upon Plaintiff's Motion for Leave to Engage in Jurisdictional Discovery (Dkt. # 23), ZPI and Mr. Gertz agreed that Cabell could propound limited discovery regarding their contacts with Washington. On June 21, 2013, the Court entered an Order on the stipulation of the parties entitling Cabell to conduct personal jurisdictional discovery "in order to respond to the Motion to Dismiss filed by the ZPI defendants" for 90 days from entry of the Order. Dkt. # 28. The discovery period was extended through January 2014, pursuant to which Plaintiff filed his response brief and Defendants filed their reply. *See* Dkt. ## 60, 65. Plaintiff on response acknowledged that there is insufficient evidence for the Court to exercise jurisdiction over Defendant Gertz individually and consented to his dismissal without prejudice. Dkt. # 60, p. 8 n. 10. Accordingly, the sole remaining questions before the Court are 1) whether the Court may exercise specific personal jurisdiction over Defendant ZPI, 2) whether Plaintiff's Complaint should be dismissed for forum non conveniens, and 3) whether Plaintiff's claims meet the minimum pleading standards of Rule 12(b)(6).

## ANALYSIS

### 1) Standard of Review for Rule 12(b)(2) Dismissal

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a complaint on the ground that the court lacks personal jurisdiction over the defendant. The plaintiff bears the burden of showing personal jurisdiction. *See Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002). Where, as here, the motion is based on written

material, rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to avoid dismissal. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002). In such cases, the Court inquires only into whether the plaintiff's pleadings, affidavits, and any materials produced during discovery make a prima facie showing of personal jurisdiction. *Id.*; *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). The court accepts as true uncontroverted allegations in the plaintiff's complaint and resolves any conflicts between parties over statements contained in affidavits in the plaintiff's favor. *Dole Food Co.*, 303 F.3d at 1108.

The court's exercise of jurisdiction over a defendant must both comport with the forum state's long-arm statute and with the constitutional requirement of due process. *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 269 (9th Cir. 1995). Because Washington's long-arm statue is coextensive with due process, the court need only analyze whether the exercise or jurisdiction would comport with due process. *Id.* "The Due Process Clause protects an individual's liberty interest in not being subject to binding judgments of a forum with which he has established no meaningful 'contacts, ties or relations.'" *Burger King v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). Due process thereby requires that individuals have "fair warning" that a particular activity may subject them to jurisdiction in a foreign forum, allowing them to structure their conduct with some minimum assurance as to whether it will render them liable to suit. *Id.* at 472. While courts recognize both "general" and "specific" jurisdiction, *Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998), the parties agree that the Court does not possess general jurisdiction over the instant Defendants in this case. *See* Dkt. # 20, p. 9; Dkt. # 60, p. 9.

Where jurisdiction is not founded on traditional territorial bases, due process requires that a defendant have sufficient "minimum contacts" with the forum state "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal citations and quotations omitted). The Ninth Circuit applies a three-prong test to analyze a claim of specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities, consummate some transaction with the forum, or perform some act whereby he avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its law;
> (2) The claim must arise out of or relate to the defendant's forum-related activities; and
> (3) The exercise of jurisdiction must be reasonable and comport with traditional notions of fair play and due process.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004); *Lee v. City of Los Angeles*, 250 F.3d 668, 692 (9th Cir. 2001). The plaintiff bears the burden to satisfy the first two prongs of the test, after which the burden shifts to the defendant to make a compelling case that the exercise of jurisdiction would be constitutionally unreasonable. *Id.*

**2) Application of Specific Personal Jurisdiction Test**

As an initial matter, Plaintiff has filed a surreply asking that new evidence and arguments submitted by Defendants for the first time upon reply, after the close of jurisdictional discovery, be stricken. *See* Dkt. # 68. In general, a litigant is not permitted to file new materials upon reply because doing so unfairly deprives the opposing party of an opportunity to respond. *See, e.g., Ellingson v. Burlington N., Inc.*, 653 F.2d 1327, 1332 (9th Cir. 1981); *Nautilus Grp., Inc. v. Icon Health & Fitness, Inc.*, 308 F.2d 1208, 1214 (W.D. Wash. 2003). Here, the Court declines to strike new arguments asserted by Defendants, as Plaintiff had a sufficient opportunity to respond at oral argument. The Court similarly declines to strike new facts, in consideration of the long

gap between Defendants' filing of their initial moving papers and reply brief created by jurisdictional discovery and in consideration of Plaintiff's opportunity to respond to the evidence at oral argument. The Court also notes that Defendants' recently introduced evidence of royalties is not dispositive and indeed has little bearing on the Court's resolution of the instant matter.

On the merits, Defendants assert that Plaintiff is unable to satisfy either of the first two prongs of the specific jurisdiction test, and, even if he could, the third factor weighs heavily against exercising personal jurisdiction over ZPI. Plaintiff, by contrast, asserts that jurisdictional discovery has revealed ZPI licensing agreements with Washington entities, as well as its control over sales of the Allende Novel in Washington, giving rise to personal jurisdiction. As Plaintiff has consented to the dismissal without prejudice of all claims against Mr. Gertz in his individual capacity, the Court herein solely addresses its exercise of personal jurisdiction over Defendant ZPI.

**(a) Purposeful Direction**

To satisfy the first prong of the specific jurisdiction test in a suit sounding in tort, Plaintiff must establish that ZPI "purposefully directed" activities into the State of Washington. *Schwarzenegger*, 374 F.3d at 803. A showing of purposeful direction "usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as distribution in the forum state of goods originating elsewhere." *Id.* Purposeful direction in an action sounding in tort is also evaluated under the three-part *Calder*-effects test. *Id.* (citing *Calder v. Jones*, 485 U.S. 783 (1984)). According to this test, a defendant purposefully directs its activities at the forum state if it has (1) committed an intentional act, (2) expressly aimed at the

forum state, and (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Id.*

Plaintiff points to several sets of licensing agreements, through which he asserts that ZPI intentionally aims its conduct at the State of Washington. First, Plaintiff asserts that jurisdictional discovery has revealed that ZPI is a party to licensing agreements with the following Washington-based entities: American Radio Theatre ("ART"), 5finity Productions, LLC, and McSteven's, Inc.. ZPI's agreement with ART relates to the production and distribution of Zorro audio dramatization and provides that ZPI will "manage the timing and type of distribution," "administer all receipts," and distribute royalties. Dkt. # 61, ¶ 5. ZPI's license with 5finity allows for 5finity to sell in Washington sketch cards incorporating ZPI's intellectual property and provides that ZPI retain control over product design and promotional materials as well as receive royalty payments. *Id.* at ¶ 4. ZPI's license with McSteven's authorizes use of Zorro intellectual property in connection with gift drink mixes. *Id.* at ¶ 8. Finally, ZPI maintains forty-eight license agreements granting consent to third parties to use ZPI's intellectual property for the sale of goods and services in Washington and elsewhere. *Id.* at ¶¶53-54. In addition, Plaintiff maintains that ZPI's license agreements with Isabelle Allende and HarperCollins Publishers provide it significant control over the distribution and sale of the allegedly infringing Allende Novel in Washington. *Id.* at ¶¶ 6, 7. For instance, ZPI's publishing agreement with HarperCollins grants the publisher the exclusive right to publish and sell the Allende novel "all over the world," including, of course, in Washington State. *Id.* at Ex. 4. Allende's book is currently sold in Barnes and Nobel retailers in Washington, and Allende has given an interview with the Seattle Times regarding her work. *See* Dkt. # 62, Exs. 1-3.

Plaintiff asserts first that ZPI's licensing agreements with Washington companies establish purposeful direction. Cabell primarily relies for this proposition on *Breckenridge Pharmaceutical, Inc. v. Metabolite Laboratories, Inc.*, 444 F.3d 1356 (Fed. Cir. 2006), a patent case that is therefore only instructive and not controlling in this litigation. The *Breckenridge* court explained that purposeful direction is not met by unsuccessful attempts to license a patent in the forum state nor successful license of the patent absent attendant control over the licensees' sales activities in the forum state, extending beyond the mere receipt of royalty income. *Id.* at 1366. "In contrast, the defendant is subject to personal jurisdiction in the forum state by virtue of its relationship with its exclusive forum state licensee if the license agreement, for example, requires the defendant-licensor, and grants the licensee the right, to litigate infringement claims." *Id.* The Ninth Circuit has also found purposeful direction where the defendant entered into cross-licensing agreements and developed a coordinated plan to distribute an allegedly infringing song into the forum state, and actually did send promotional copies of the song into the forum state. *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 899 (9th Cir. 2002).

Unfortunately for Plaintiff, ZPI's licensing agreements lack the requisite indicia of control that were dispositive to the exercise of personal jurisdiction in *Breckenridge* and *Mattel*. Such control is essential as "the purposeful availment analysis turns upon whether the defendant's contacts are attributable to actions by the defendant *himself*, or conversely to the unilateral activity of another party." *Roth v. Garcia Marquez,* 942 F.2d 617, 621 (9th Cir. 1991) (quoting *Hirsch v. Blue Cross, Blue Shield of Kansas* City, 800 F.2d 1474, 1478 (9th Cir. 1986) (emphasis in original). "The Supreme Court has made clear that contacts resulting from the 'unilateral activity of another party or third person' are not attributable to a defendant." *Red*

*Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998) (citing *Burger King*, 471 U.S. at 475 & n. 17).

Defendants aptly point out that there is no evidence in this case, unlike in *Breckenridge*, that ZPI granted exclusive rights to the forum state licensees. *Cf. Breckenridge*, 444 F.3d at 1366 (finding personal jurisdiction where an "*exclusive* license agreement" produced an ongoing relationship between defendant and licensee doing business in the forum state) (emphasis added). The ART and McStevens licenses, for instance, explicitly grant only non-exclusive rights to the trademarked property. *See* Dkt. # 61, p. 39 (providing ART with a "one time, non-exclusive license to use the character 'Zorro' to write one original script") & p. 63 (granting McStevens a "non-exclusive license to the 'Property' for the manufacture, distribution, and sale of the 'Licensed Articles'" during a three-year term). While the *Breckenridge* court did not explicitly determine exclusivity to be a prerequisite to the exercise of personal jurisdiction, the Federal Circuit has elsewhere explained that "exclusivity" in license agreements is relevant to a finding of purposeful direction, as it creates "continuing obligations" between the defendant and the forum state. *Akro v. Luker*, 45 F.3d 1541, 1546 (Fed. Cir. 1995); *cf. Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1362 (Fed. Cir. 1998) (finding no purposeful direction where none of defendant's licenses "requires [it] to be so nearly involved with its licensees as was the case with the exclusive licensee in *Akro*."). Other activities indicating purposeful direction by the foreign defendant in *Breckenridge* are also absent here, such as its sending of cease and desist letters into the forum state, its contractual grant of the right to sue for infringement to the exclusive licensee, and its cooperation with the licensee in enforcement activities. *Id.* at 1367; *cf.* Dkt. # 61, p. 24 (license with 5finity requiring it to "assist [ZPI] in enforcement") & pp. 39, 63 (no litigation provisions in ART and McStevens licenses).

*Mattel* too is distinguishable by virtue of its foreign defendants' direct control over the purposeful direction of their activities at the forum state. Unlike in the instant case, where ZPI exercised only attenuated control over the direction of Zorro-related products into Washington by third-party distributors, the *Mattel* foreign defendants were corporate affiliates of the primary local defendants, coordinated with the local defendants in distributing the allegedly infringing albums into the forum, and themselves sent promotional materials to the forum. *See Mattel, Inc. v. MCA Records, Inc.*, 28 F.Supp.2d 1120, 1128 (C.D. Cal. 1998). These extensive activities evidenced "an intent to affect the forum," of which ZPI's highly attenuated connections to Washington State has given no indication. *Id.* Further, none of the licensing agreements provided continuing obligations for ZPI in the forum beyond their brief terms. *Cf. Roth v. Garcia Marquez,* 942 F.2d 617, 622 (9th Cir. 1991) (finding purposeful availment where contracts provided for the foreign defendant's "continuing and extensive involvement with the forum").[2]

Alternatively, Plaintiff contends that ZPI's placement of the allegedly infringing Allende Novel into the stream of commerce constitutes purposeful direction. It is axiomatic that the "placement of a product into the stream of commerce, without more, is not an act purposefully directed toward a forum state." *Holland America*, 485 F.3d at 459. "Even a defendant's awareness that the stream of commerce may or will sweep the product into the forum state does not convert the mere act of placing the product into the stream of commerce into an act purposefully directed toward the forum state." *Id.* The plaintiff must show additional conduct

---

[2] Counsel for Mr. Cabell has testified to the existence of forty-eight other licensing agreements granting permission to sell nationwide, and even worldwide, products bearing ZPI's intellectual property. Dkt. # 61, ¶ 53. While the Court declines ZPI's invitation to strike this testimony as hearsay and lacking in foundation (Dkt. # 65, p. 4 n. 4), the Court notes that these licenses' purported existence does not change the Court's analysis. None of these alleged contracts appears to have in any way specifically contemplated sales in Washington or provided for the purposeful direction of Zorro-related products into the forum, and Plaintiff has provided no evidence of actual sales in Washington resulting from these licenses. At best, the licenses are relevant to a stream-of-commerce theory, which, as explained *infra*, is nonetheless unavailing in this case.

indicating "an intent or purpose to serve the market in the forum state, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County*, 480 U.S. 102, 112 (1987).

Plaintiff has not shown that ZPI indicated any purpose to serve or target the Washington market in particular. *See, e.g. Starbucks Corp. v. Wellshire Farms, Inc.*, 2013 WL 6640124, *3-4 (finding that plaintiff had failed to show that defendant engaged in additional conduct beyond merely placing the infringing product into the stream of commerce for the Court to exercise jurisdiction); *contra Oakley Inc. v. Jofa AB*, 287 F.Supp.2d 1111, 1116 - 17 (finding purposeful direction where defendant knew that the accused product would be sold in the forum state, acted in concert with other defendants to place the product in the stream of commerce, and should have reasonably anticipated being brought into court in the forum state). ZPI's act of licensing intellectual property to Ms. Allende, which in turn ended up in a book distributed into Washington along with the rest of the world, is far too attenuated to confer personal jurisdiction.

Finally, Plaintiff argues that the *Calder* effects test establishes purposeful direction. This effects test comes into play where a non-resident defendant has engaged in tortious conduct outside the forum state that was intended to and does in fact cause injury within the forum state. *Calder*, 465 U.S. at 790. Purposeful direction pursuant to this test requires: (1) an intentional act, (2) aimed at Washington, (3) causing harm that the defendant knows will be suffered in Washington. Plaintiff has pled tortious interference with contract and business expectancy such that the test applies. *See* FAC at p. 16; *cf. Starbucks*, 2013 WL 6640124 (declining to apply *Calder* test where plaintiff had only pled breach of contract and negligence). Construing disputed

facts in Plaintiff's favor, as the Court must at this stage, Plaintiff makes a prima facie showing under the first and third prongs of the *Calder* test.[3] However, Plaintiff is still unable to show that ZPI expressly aimed any of its conduct at the forum state. *Cf. Gee How Oak Tin Nat. Benevolent Ass'n v. Gee How Oak Tin Ass'n of North America, Inc.*, 2013 WL 1191264 * 9 (N.D. Cal. 2013) (finding express aiming where defendant had "adopted bylaws that expressly target California to the foreseeable detriment of Plaintiff"). ZPI's alleged tortious interference with Mr. Cabell's contracts occurred entirely in Germany, and there is no indication that ZPI expressly aimed its allegedly infringing sales of the Allende novel, or any other ZPI-related products, at the forum.

**(b) Arising out of Activity in the Forum State**

Even if Plaintiff could establish purposeful direction, Plaintiff is unable to show that his claims arise out of ZPI's attenuated contacts with the forum state. Plaintiff argues that there is a sufficient connection between his infringement and copyright ownership claims and the distribution of products incorporating Zorro intellectual property, including the Allende novel, in Washington State to meet this second prong. *See* Dkt. # 60, p. 2. Yet Plaintiff provides no authority for such a position, the consequence of which is that the "arising out of" prong would be met in any intellectual property infringement action where the property happened to be sold, even by a third-party, into the forum.

The Ninth Circuit's personal jurisdiction analysis requires a closer nexus. Arising out of is a "but for" test in the Ninth Circuit. *Wellons, Inc. v. SIA Energoremonts Riga Ltd.*, 2013 WL 5314368, *8 (W.D. Wash. 2013). Jurisdiction is proper if the events giving rise to the claim

---

[3] Though ZPI refutes by way of affidavit that it knew that Mr. Cabell resided in Washington during the course of the alleged tortious conduct, *see* Dkt. # 66, ¶ 5, the Court resolves this factual conflict in Plaintiff's favor for the purpose of its personal jurisdiction analysis. *See Dole Food Co.*, 303 F.3d at 1108.

would not have occurred "but for" the defendant's transaction of business in the forum. *Id.* This test preserves the requirement that there be a sufficient nexus between the plaintiff's cause of action and the defendant's activities in the state. *Id.; Raymond v. Robinson*, 104 Wash.App. 627, 640, 15 P.3d 697 (2001). In *Wellons*, for instance, this Court found the second prong met where plaintiff's claim would not have arisen but for a contract that was largely negotiated in the forum state and contemplated future consequences in Washington.

Here, by contrast, Plaintiff's claims arise primarily out of cease and desist letters sent to Germany, as well as ZPI's ownership of federally registered trademarks and nationwide distribution of the Allende novel by HarperCollins (not by ZPI). Plaintiff's claims in no way hinge on its contacts with Washington. Even if the Allende novel, for instance, had never been distributed in Washington, Plaintiff would still be able to assert his claims in the appropriate forum. None of ZPI's other relatively de minimus contacts, by way of its non-exclusive licensing agreements, provides a but for cause of Plaintiff's claims. It is not by virtue of any of these contracts, or by virtue of any sales of Zorro-related products in Washington, that Defendants' claims arise. *Cf. Mattel*, 354 F.3d at 864 (finding sufficient relationship between claim and forum-related activities where the litigation would not have arisen but for defendant's prior initiation of a suit in the forum).

**(c) Reasonableness and Other Claims**

Accordingly, the Court finds that Plaintiff has not shown a sufficient nexus between his claims and ZPI's forum related activities to permit this Court to extend the long arm of its jurisdictional authority to ZPI. As Plaintiff has failed to meet his burden to make a prima facie showing that either the first or second prong of the personal jurisdiction analysis has been met,

the Court need not assess whether the extension of personal jurisdiction over ZPI would be reasonable. Having found that Plaintiff's claims must be dismissed for lack of personal jurisdiction, the Court does not reach the additional grounds for dismissal raised by Defendants under Rule 12(b)(6) and forum non conveniens.

**CONCLUSION**

For the reasons stated herein, the Court hereby ORDERS that Defendants' Motion to Dismiss is GRANTED. The above-captioned matter is DISMISSED with respect to Defendants Zorro Productions, Inc. and John Gertz for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2).

DATED this 21 day of October 2014.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE